No. 25-10372

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### JORGE ANTONIO GUERRA QUEZADA,
*Plaintiff-Appellant*

v.

### UNITED STATES OF AMERICA, KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY; TODD LYONS, ACTING DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT, IN HIS OFFICIAL CAPACITY; JOHN DOE'S; PAMELA BONDI, U.S. ATTORNEY GENERAL, IN HER OFFICIAL CAPACITY,
*Defendant-Appellees*

_____

**On Appeal from the United States District Court for the
Northern District of Texas – Dallas Division
District Court No. 3:24-cv-02212-K**

_____

### APPELLANT'S OPENING BRIEF

_____

John M. Bray
911 N. Bishop Ave.
Dallas, Texas 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com
*Counsel for Appellant*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned Counsel for Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant** | **Appellees** |
| --- | --- |
| Jorge Antonio Guerra Quezada | United States of America |

**Appellees**

United States of America

Kristi Noem, Secretary
Department of Homeland Security

Todd Lyons, Director
Immigration and Customs Enforcement

Pamela Bondi, U.S. Attorney General

**Counsel for Appellant on Appeal and Before the District Court**

John M. Bray
911 N. Bishop Ave.
Dallas, Texas 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com

**Counsel for Appellees**

Sarah E. Delaney,
Trial Counsel

Brian W. Stoltz,
Appellate Counsel

Nancy Larson,
Acting U.S. Attorney for Dallas

U.S. Attorney's Office – Dallas
1100 Commerce St., Third Floor
Dallas, Texas 75242


_/s/ John M. Bray_
Counsel for Appellant

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant respectfully requests oral argument. This case raises complex and novel questions of derivative citizenship under <u>8 U.S.C. § 1401(g)</u>, including the application of the constructive physical presence doctrine across multiple generations and the legal implications of agency inconsistency in adjudicating Form N-600 applications. This appeal also implicates the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, <u>144 S. Ct. 2244</u> (2024), which reaffirms the judiciary's independent role in interpreting federal statutes without deference to agency determinations. Oral argument may assist the Court in resolving these mixed questions of law and fact, particularly as they relate to constitutional claims, historical patterns of agency misconduct, and the equitable transmission of citizenship rights.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................. iii

TABLE OF CONTENTS................................................................. iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................3

STATEMENT OF THE CASE ..............................................................5

SUMMARY OF THE ARGUMENT....................................................7

ARGUMENT ...................................................................................10

    I.  Standard of Review...............................................................10

    II. The District Court Erred in Adopting the Magistrate's Finding and Conclusions That Appellant Is Not a U.S. Citizen...................................12

        A. The Magistrate Judge Failed to Meaningfully Engage with the Legal Standard for Derivative Citizenship under INA § 301(a)(7) and 301(g). ...................................................................................................12

        B. Appellant Established a Valid Multigenerational Transmission of Citizenship Based on Cruz Rodriguez's U.S. Citizenship and Constructive Physical Presence. ...........................................13

        C. The Agency's Prior Approval of N-600 Applications and Its Subsequent Reversal Without Explanation Is Arbitrary, Capricious, and Contrary to Law....................................................................16

    III.   The District Court Erred In Adopting The Magistrate's Recommendation Without Permitting a Jurisdictional Prove-Up............18

    IV.   The District Court Failed to Apply De Novo Review and Allow APA Challenges. ........................................................................21

    V. The Government is Estopped From Reversing Its Prior Citizenship Grants Without Justification.................................................................23

    VI.   The Government's Conduct Violated Appellant's Fifth Amendment Right To Due Process .........................................................27

    VII.   The FTCA Claims Were Improperly Dismissed Under the Sovereign Immunity Exceptions.................................................................29

    VIII.   Appellant Was Treated Unequally Compared to Similarly Situated Individuals, Including His Own Family Members.................................31

    IX.   The District Court Failed to Consider the Broader Pattern of Agency Misconduct in Citizenship Determinations ............................................33

CONCLUSION....................................................................................36

CERTIFICATE OF SERVICE ...............................................................38

CERTIFICATE OF COMPLIANCE ......................................................39

# TABLE OF AUTHORITIES

## Supreme Court Cases

*Accardi v. Shaughnessy,*
347 U.S. 260 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

*Afroyim v. Rusk,*
387 U.S. 253 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23, 13

*Berkovitz v. United States,*
486 U.S. 531 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Chevron U.S.A. Inc. v. Nat. Res Def. Council, Inc.,*
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10, 17, 21

*Guerrero-Lasprilla v. Barr,*
589 U.S. 211 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*INS v. Hibi,*
414 U.S. 5 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137, 177 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Millbrook v. United States,*
569 U.S. 50 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Montana v. United States,*
440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 17

*Ng Fung Ho v. White,*
259 U.S. 276 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 27, 31

*Sessions v. Morales-Santana,*
582 U.S. 47 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Trop v. Dulles,*
356 U.S. 86 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Vill. Of Willowbrook v. Olech,*
    528 U.S. 562 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 33

*Wilkinson v. Garland,*
    601 U.S. 209, 144 S. Ct. 780 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Federal Cases

*Alwan v. Ashcroft,*
    388 F.3d 507 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Castro v. United States,*
    34 F.4th 431(5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Doe v. McAleenan,*
    926 F.3d 129 (4th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Marquez-Marquez v. Gonzales,*
    455 F.3d 548 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rios-Valenzeula v. Dep't of Homeland Sec.,*
    506 F.2d 393 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . .. . . 20, 35

*United States v. Chou Jin Kiang,*
    56 F. App'x 696 (6th Cir. 2003) . . . . . . . . . . .. . . . . . . . . . . . . . . . .. . . . . . 25

*United States v. Utah Constr. & Mining Co.,*
    384 U.S. 394 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Agency Authorities

*Matter of Farley,*
    11 I. & N. Dec. 51 (BIA 1965) …………………………………………….. 14, 18

*In re Hinojosa-Trejo,*
    A090 393 900 (BIA Mar. 11, 2019) ………………………………………… 23

*Matter of Navarrete,*
    12 I. & N. Dec. 138 (BIA 1967)....................................................... 14, 15, 18

*Matter of Yanez-Carrillo,*

10 I. & N. 366 (BIA 1963) ............................................................. 14-16, 18

U.S. Gov't Accountability Off., *Immigration Enforcement: ICE Can Improve Its Oversight of Aliens Removed from the United States*, GAO-15-153 (2014) ...................................................... 34

## **Federal Statutes**

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . 11, 22

8 U.S.C. § 1252(a)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

8 U.S.C. § 1252(b)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .2

8 U.S.C. § 1252(b)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

8 U.S.C. § 1401(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 U.S.C. § 1401(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 13, 17

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . 5

28 U.S.C. § 1346(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2680 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## **Federal Regulations**

8 C.F.R. § 342.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

8 C.F.R. § 333.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **JURISDICTIONAL STATEMENT**

Appellant Jorge Antonio Guerra Quezada seeks review of a final judgment entered on May 15, 2024, by the United States District Court for the Northern District of Texas, which dismissed Appellant's claims against the United States and various federal agencies and officials. The district court adopted the magistrate judge's findings and conclusions that Appellant had failed to establish derivative U.S. citizenship under the Immigration and Nationality Act ("INA"), and that his claims under the Administrative Procedure Act ("APA"), Declaratory Judgment Act, Federal Tort Claims Act ("FTCA"), and the Fifth Amendment should be dismissed for lack of jurisdiction and failure to state a claim.

This case presents legal and constitutional questions, including whether Appellant—who was previously issued a Certificate of Citizenship by U.S. Citizenship and Immigration Services—was unlawfully removed from the United States despite being a United States citizen by birth. The appeal also raises statutory interpretation issues under INA §§ 301(a)(7) and 301(g) [8 U.S.C. §§ 1401(a)(7) & 1401(g)], and challenges the agency's actions as arbitrary and capricious under the APA, particularly in light of the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which abolished *Chevron* deference and requires independent judicial interpretation of federal statutes.

1

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which confers appellate jurisdiction over final decisions of the district courts. Jurisdiction is also proper under 8 U.S.C. § 1252(b)(5)(A), which vests authority in the courts of appeals to determine claims of U.S. nationality raised in removal or related proceedings. Venue is proper in this Court because the proceedings below occurred in the Northern District of Texas, which lies within the territorial jurisdiction of the Fifth Circuit.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.  Whether, in light of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, <u>603 U.S. 369</u>, <u>144 S. Ct. 2244</u> (2024), the district court erred by deferring to USCIS's unexplained reversal of previously granted N-600 citizenship determinations, without conducting an independent statutory analysis under Sections 301(a)(7) and 301(g) of the Immigration and Nationality Act (INA)?[1]

2.  Whether Appellant Jorge Antonio Guerra Quezada—whose father and grandfather were both recognized as U.S. citizens based on a maternal transmission line originating with Cruz Rodriguez, a U.S.-born citizen—has established derivative citizenship at birth as a matter of law or fact, under the plain meaning of the INA and applicable precedents?

3.  Whether the district court erred in adopting the magistrate judge's findings and conclusions without permitting discovery or a factual hearing to resolve material questions related to Cruz Rodriguez's continuous physical presence and Appellant's previously adjudicated status?

4.  Whether the government's revocation of Appellant's previously approved Form N-600—without explanation, notice, or hearing—violated Appellant's procedural due process rights under the Fifth Amendment and constituted arbitrary and capricious action in violation of the Administrative Procedure Act?

---

[1] Appellant also utilizes the parallel citations: <u>8 U.S.C. §§ 1401(a)(7)</u> and <u>1401(g)</u>.

5.  Whether the government's disparate treatment of Appellant—while similarly situated members of the Guerra family continued adjudicated Form N-600 citizenship petitions on the same facts—amounts to unequal enforcement of immigration law in violation of constitutional guarantees of fairness and equal protection?

## STATEMENT OF THE CASE

Appellant Jorge Antonio Guerra Quezada was born on February 15, 1993, in Tamaulipas, Mexico, to married parents Jorge Guerra Vazquez and Maria Guadalupe Quezada Arguijo. He claims derivative U.S. citizenship through his paternal line. His great-grandmother, Cruz Rodriguez de Guerra, was born in Herington, Kansas, in 1924. Appellant asserts that Cruz transmitted citizenship to her son, Antonio Guerra, then to Appellant's father, Jorge Guerra Vazquez, and ultimately to Appellant under former INA §§ 301(a)(7) and 301(g).

On March 12, 2021, Appellant was convicted in the 363rd Judicial District Court of Dallas County, Texas, for the offense of online solicitation of a minor. Following this, DHS initiated removal proceedings under Section 237(a)(2)(E)(i) of the INA [8 U.S.C. § 1227(a)(2)(E)(i)], alleging that Appellant was removable as an alien convicted of a qualifying offense. On June 1, 2021, he was served with a Notice to Appear, which listed his country of nationality as Mexico.

On August 19, 2021, while Appellant remained in DHS custody, his father filed a Form N-600, Application for Certificate of Citizenship, with U.S. Citizenship and Immigration Services (USCIS). Appellant's immigration counsel notified ICE and the Immigration Judge of the pending N-600 and its relevance to Appellant's own nationality claim. On or about November 9, 2021, USCIS granted the father's N-600 application, and he attended an oath ceremony on December 2, 2021.

Despite having actual notice of the father's approved derivative citizenship claim—based on the same factual lineage and documentary record—DHS removed Appellant to Mexico in October 2021. His claim to U.S. citizenship was not adjudicated before removal.

On February 16, 2024, Appellant filed a civil complaint in the Southern District of Texas, asserting claims under the Administrative Procedure Act, the Declaratory Judgment Act, the Federal Tort Claims Act, and the Fifth Amendment, which was eventually transferred to the Dallas Division of the United States District Court for the Northern District of Texas. The government moved to dismiss. On January 29, 2025, the magistrate judge issued a report and recommendation recommending dismissal of all claims. The district court adopted the recommendation in full and dismissed the case by order dated February 14, 2025. This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing Appellant's claims without first resolving the threshold issue of his United States citizenship. Appellant's claim is supported by a well-documented lineage of transmission through his U.S.-born great-grandmother, Cruz Rodriguez de Guerra, and his father, Jorge Guerra Vazquez, who was granted a certificate of citizenship by USCIS based on the same record. Despite the government being on notice of this approval, Appellant was removed from the United States the very next day—without a hearing, without a final determination on his nationality, and without due process. This violates the fundamental principle that "[i]t is wrong to deport a United States citizen," and courts must rigorously ensure such claims are fully adjudicated before removal. *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922); *see also Doe v. McAleenan*, 926 F.3d 129, 132–33 (4th Cir. 2019).

At the heart of this appeal is the court's premature acceptance of the magistrate judge's recommendation, which disposed of Appellant's citizenship claim as a matter of law without affording discovery or factual development. Citizenship determinations are "mixed questions of law and fact," requiring the court to evaluate legal standards in light of a developed record. *Wilkinson v. Garland*, 601 U.S. 209, 144 S. Ct. 780, 792 (2024). The Fifth Circuit has also recognized that questions of

nationality are reviewable de novo. *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 396 (5th Cir. 2007).

Compounding this error, the district court failed to apply the correct interpretive framework under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which overruled *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Following *Loper Bright*, courts must independently interpret federal statutes, including the INA. Agency interpretations are no longer entitled to automatic deference, and the district court's uncritical adoption of the government's position without independent analysis was improper. Moreover, the government's reversal of its prior approval—without explanation or engagement with the factual record—was arbitrary, capricious, and contrary to law under the Administrative Procedure Act. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Further, the government's disparate treatment of similarly situated family members raises serious equal protection and estoppel concerns. While Appellant was removed without resolution of his claim, his father received recognition of derivative citizenship on the same record, and other members of the Guerra family are pursuing comparable claims through N-600 applications. "[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Accardi*

*v. Shaughnessy*, <u>347 U.S. 260, 267</u> (1954). Selectively enforcing those procedures undermines public confidence and violates the most basic principles of fairness.

Citizenship is not a discretionary benefit—it is a legal status with constitutional magnitude. *Afroyim v. Rusk*, <u>387 U.S. 253, 267</u>–68 (1967). By removing Appellant without a hearing or adjudication, the government deprived him of liberty without due process in violation of the Fifth Amendment. This Court has both the authority and the obligation to remand the case for proper adjudication of Appellant's nationality claim and for review of the government's procedural failures.

# ARGUMENT

## I.    Standard of Review.

This Court reviews questions of law, including claims of United States citizenship and statutory interpretation, *de novo*. *See Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 396 (5th Cir. 2007). The issue of whether an individual has derived citizenship under the Immigration and Nationality Act ("INA") presents a mixed question of law and fact, which is subject to independent judicial review. *See Marquez-Marquez v. Gonzales*, 455 F.3d 548, 554 (5th Cir. 2006).

Following the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Chevron* deference no longer applies to agency interpretations of federal statutes. Courts must now "decide all relevant questions of law" and "interpret constitutional and statutory provisions" without deferring to the agency's view. *Id.* at 406–07. As the Court reaffirmed, "The judiciary, not the executive, has the duty to say what the law is." *Id.* at 385 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

Therefore, the district court was obligated to conduct an independent statutory interpretation of INA §§ 301(a)(7), 301(g), and the constructive presence doctrine, rather than defer to USCIS's unexplained reversal of its prior adjudication. Where

the agency fails to engage in reasoned decision-making, its actions are reviewable under the Administrative Procedure Act and must be set aside if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); 5 U.S.C. § 706(2)(A).

To the extent that Appellant challenges the procedures used to determine his citizenship claim—including the absence of an evidentiary hearing, lack of jurisdictional discovery, and the adoption of agency findings without meaningful review—those claims also raise constitutional and legal questions subject to this Court's jurisdiction under 8 U.S.C. § 1252(a)(2)(D). *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233, 140 S. Ct. 1062, 1068 (2020) (mixed questions involving application of law to undisputed facts are legal questions reviewable under § 1252(a)(2)(D)).

Because the question of Appellant's citizenship goes to the very core of the Court's jurisdiction—and implicates fundamental rights under the Fifth Amendment—the legal standards governing *de novo* review, APA scrutiny, and independent statutory interpretation all apply with full force.

## II.    The District Court Erred in Adopting the Magistrate's Finding and Conclusions That Appellant Is Not a U.S. Citizen.

### A. The Magistrate Judge Failed to Meaningfully Engage with the Legal Standard for Derivative Citizenship under INA § 301(a)(7) and 301(g).

The district court erred in adopting the magistrate judge's recommendation that Appellant Jorge Antonio Guerra Quezada failed to meet his burden to establish derivative citizenship under the Immigration and Nationality Act ("INA"). Appellant's claim arises under INA §§ 301(a)(7) and 301(g), which govern the transmission of U.S. citizenship by birth to children born abroad to a U.S. citizen parent. While the statutory provisions impose specific physical presence Immigration Appeals (the "Board" or the "BIA") and several courts have recognized that in certain circumstances, actual physical presence may be substituted with constructive presence based on involuntary displacement, cultural hardship, or governmental interference.

Here, the magistrate judge discounted Appellant's multigenerational citizenship transmission without engaging in any substantive legal analysis of this doctrine or the precedent supporting it. Instead, the findings reflect a truncated factual summary and an unsupported legal conclusion. The magistrate judge's failure to apply the appropriate standard or consider the evidentiary record constitutes reversible legal error.

**B. Appellant Established a Valid Multigenerational Transmission of Citizenship Based on Cruz Rodriguez's U.S. Citizenship and Constructive Physical Presence.**

Contrary to the magistrate judge's findings, Appellant presented unrebutted evidence that he acquired U.S. citizenship at birth through a legally cognizable stepwise transmission of citizenship beginning with his great-grandmother, Cruz Rodriguez, a U.S. citizen born in Herington, Kansas, in 1924. Cruz's citizenship is uncontested. However, the magistrate judge failed to meaningfully analyze whether her presence in the United States—though later interrupted by systemic obstacles and cultural displacement—may be deemed "constructive physical presence" for purposes of transmitting citizenship under the Immigration and Nationality Act.

Section 301(g) of the INA (8 U.S.C. § 1401(g)) provides that a person born abroad to one U.S. citizen parent may acquire citizenship at birth only if that parent was physically present in the United States for at least ten years prior to the child's birth, five of which were after the age of fourteen. This provision does not permit automatic transmission of citizenship to grandchildren or great-grandchildren. Instead, each generation must independently satisfy the statute through their own U.S. citizen parent's requisite physical presence in the United States prior to their birth. If any generational link is broken—such as where one parent fails to meet the statutory presence requirement—then the chain of derivative citizenship is severed.

However, the statute does not require literal, physical presence in all circumstances. Both the BIA and federal courts have recognized that, in extraordinary cases, an individual may satisfy the physical presence requirement constructively**,** when the absence from the United States was due to involuntary or systemic constraints and where strong ties to the U.S. remained. *See Matter of Farley*, 11 I. & N. Dec. 51 (BIA 1965); *Matter of Navarrete*, 12 I. & N. Dec. 138 (BIA 1967); *Matter of Yanez-Carrillo*, 10 I. & N. 366 (BIA 1963).

In *Navarrete*, the Board found constructive presence where a U.S. citizen mother was involuntarily raised in Mexico due to familial and systemic pressures. Despite lacking continuous physical presence in the United States, her enduring cultural, familial, and political ties to the country allowed her to transmit citizenship to her son. Similarly in another case, *Yanez-Carrillo*, the BIA held that a father who unknowingly possessed U.S. citizenship could not have voluntarily relinquished it and was therefore still eligible to transmit citizenship to his children.

These principles apply with equal force here. Cruz Rodriguez attempted to reenter the United States in the 1940s but was wrongly turned away at the border under the erroneous belief that she had abandoned her U.S. residence. This denial was not a voluntary departure. Rather, it was the result of legal misapplication and systemic barriers faced by U.S.-born persons of Mexican descent during that era.

Cruz's ties to the United States remained strong and demonstrable: her father, Teodoro Rodriguez, registered for the World War I draft; her brothers served honorably in World War II; and she made multiple efforts throughout her life to affirm her U.S. citizenship status. These facts mirror those in *Navarrete* and warrant recognition of Cruz's constructive physical presence for purposes of transmission under § 301(g).

This recognition is essential to the integrity of the citizenship transmission chain. Cruz's constructive presence satisfies the physical presence requirement to transmit citizenship to her son, Antonio Rodriguez. The magistrate judge, however, erroneously focused solely on Antonio's physical presence—without first assessing whether he lawfully acquired citizenship from Cruz. Once Cruz's transmission is acknowledged, Antonio becomes a U.S. citizen at birth.

Next, under the same framework, Antonio's transmission to his son, Jorge Guerra Vazquez, must satisfy the § 301(g) standard. Here, the record shows Jorge was born abroad to Antonio and was raised by a U.S. citizen father who lived and worked in the United States for substantial periods. If the government seeks to argue that Jorge failed to meet the physical presence threshold, that question too demands factual development—not summary dismissal. Crucially, like the father in *Yanez-*

*Carrillo*, Jorge appears to have been unaware of his derivative citizenship, rendering any possible relinquishment or waiver of that status legally ineffective.[2]

Thus, when viewed correctly, Appellant's case presents a complete, multigenerational stepwise transmission of U.S. citizenship: Cruz to Antonio (via constructive presence), Antonio to Jorge (under § 301(g)), and Jorge to Appellant (likewise under § 301(g)). At each generational step, the record provides at least a prima facie basis to find satisfaction of the statutory elements, or at a minimum, to warrant evidentiary development. The magistrate judge's failure to address this layered transmission—and to acknowledge the role of constructive presence and unknowing citizenship—renders the district court's adoption of those findings clearly erroneous.

### C. The Agency's Prior Approval of N-600 Applications and Its Subsequent Reversal Without Explanation Is Arbitrary, Capricious, and Contrary to Law.

USCIS previously approved Form N-600 certificates of citizenship for both Appellant and his father, Jorge Guerra Vazquez, based on the same lineage and legal theory presented here. Appellant's father obtained his certificate in 2021, following an adjudication that recognized Antonio Guerra's acquisition of U.S. citizenship

---

[2] *See Matter of Yanez-Carrillo*, 2017 WL 8787182, at *2 (holding that a citizen cannot be said to have relinquished citizenship if unaware of its existence); *see also Afroyim v. Rusk*, 387 U.S. 253, 268 (1967) (loss of citizenship requires clear evidence of intent to relinquish).

through Cruz Rodriguez. Shortly thereafter, Appellant himself received approval. These approvals were later rescinded without any articulated rationale or opportunity to be heard.

This reversal violates core principles of administrative law. It should be noted that post-*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024), courts are no longer bound by *Chevron* deference to an agency's interpretation of the INA. The judiciary must independently interpret federal law, including the standards governing derivative citizenship. *See id.* at 2257, 2269. Therefore, an agency's unexplained departure from its own prior adjudication—especially when that adjudication was favorable to a putative citizen—is presumptively arbitrary and capricious under the Administrative Procedure Act ("APA"). *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

Here, the government provided no explanation for its about-face, nor did it distinguish between Appellant and other members of the Guerra family with pending or approved N-600 applications on identical facts. Such inconsistent treatment violates principles of fairness, equal protection, and administrative regularity. The district court's failure to scrutinize this reversal further underscores its legal error in adopting the magistrate's findings wholesale.

17

### III.  The District Court Erred In Adopting The Magistrate's Recommendation Without Permitting a Jurisdictional Prove-Up.

The district court adopted the Magistrate Judge's Findings, Conclusions, and Recommendation ("FCR") without resolving material factual disputes at the core of Appellant's derivative citizenship claim. Despite repeated requests for jurisdictional discovery or an evidentiary hearing—both before the agency and in district court—no such process was afforded. As a result, Appellant's claim was dismissed prematurely, without proper development of the factual record or adjudication of the legal standards governing derivative citizenship.

The determination of whether Appellant derived U.S. citizenship under 8 U.S.C. §§ 1401(a)(7) and 1401(g) depends on several unresolved factual issues. These include: (1) whether Cruz Rodriguez, Appellant's great-grandmother, satisfied the physical presence requirement—either actually or constructively—under agency-recognized doctrines such as those applied in the published Board decisions of *Matter of Farley*, 11 I. & N. Dec. 51 (BIA 1965); *Matter of Navarrete*, 12 I. & N. Dec. 138 (BIA 1967); *Matter of Yanez-Carrillo*, 10 I. & N. 366 (BIA 1963); (2) whether Cruz's son, Antonio Guerra, satisfied the statutory transmission requirements under § 1401(g), including by operation of constructive presence; and (3) whether the agency's treatment of similarly situated members of the Guerra family undermines its denial of Appellant's claim.

The magistrate's FCR notably concluded that Antonio Guerra lacked sufficient physical presence to transmit citizenship to his son, Jorge Guerra Vazquez. But that conclusion was reached without the benefit of a factual hearing or application of the constructive presence doctrine, which Appellant squarely raised. The record includes declarations, border-entry documentation, and military enlistment records showing the Rodriguez family's deep and sustained ties to the United States, and Cruz Rodriguez's own efforts to reassert her citizenship following her forced exclusion from reentry. These facts warranted further factual inquiry, particularly given that constructive presence may, under BIA precedent, satisfy the physical presence requirement where removal, cultural displacement, or hardship interfered with continued residence in the United States.

Moreover, Appellant's legal team explicitly alerted the district court that other Guerra family members had filed N-600 applications asserting the same multigenerational transmission theory based on Cruz Rodriguez's U.S. citizenship. Such applications remain pending, and the government has yet to articulate why Appellant's claim was rejected while others were not. This disparate treatment, too, raises a material question of fact and fairness that should have been explored through discovery or evidentiary development.

Fifth Circuit law is clear: where jurisdictional facts are in dispute, the district court must afford plaintiffs the opportunity to develop the record. "The district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). The court must not resolve factual disputes adverse to the plaintiff on the pleadings alone when those facts form the very basis of jurisdiction or citizenship status. *See also Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004) (remanding for factual development on citizenship claim). Additionally, the Fifth Circuit has repeatedly remanded cases raising derivative or acquired citizenship claims for further fact-finding at the district court level, including through transfer under 8 U.S.C. § 1252(b)(5)(B) when the record requires factual development to resolve nationality claims.[3]

Here, Appellant received no such opportunity. The court dismissed his case sua sponte, without a hearing, without discovery, and without compelling the agency to disclose the full administrative record of Appellant's N-600 adjudication. The district court's blind adoption of the magistrate's findings—despite unresolved

---

[3] Appellant would ask the Court to take judicial notice that, in similar cases, the Fifth Circuit has recognized that disputed derivative citizenship claims warrant factual development at the district court level. *See Walters v. Garland*, No. 23-60269, slip op. at 1–2 (5th Cir. Sept. 18, 2023) (unpublished) (granting unopposed motion to transfer the case to the Northern District of Texas pursuant to 8 U.S.C. § 1252(b)(5)(B) to adjudicate Appellant's nationality claim and holding the petition in abeyance pending resolution). This aligns with the statutory framework and the constitutional imperative to fully adjudicate claims implicating U.S. citizenship.

factual disputes and the lack of procedural development—constitutes reversible error. The stakes of such a claim, which implicates an individual's U.S. citizenship and the government's authority to detain or deport, warrant far more than summary dismissal.

### IV.     The District Court Failed to Apply De Novo Review and Allow APA Challenges.

The district court improperly deferred to the agency's unexplained revocation of Appellant's citizenship status and denied a meaningful review of his claim under the Administrative Procedure Act (APA). This approach is untenable under current Supreme Court precedent and contrary to the statutory and constitutional framework governing citizenship determinations.

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court squarely held that federal courts may not defer to administrative interpretations of law. Chevron deference is no longer viable. Instead, courts must "exercise independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 389. Interpretation of the Immigration and Nationality Act (INA) is thus the exclusive province of Article III courts—not USCIS or the BIA. Citizenship, in particular, is not a discretionary benefit; it is a legal status of constitutional dimension that requires strict adherence to statutory standards. *See Nguyen v. INS*, 533 U.S. 53, 67 (2001).

The district court erred by failing to engage in an independent review of the agency's actions in light of *Loper Bright*. Rather than applying a de novo legal analysis to Appellant's statutory claim under INA §§ 301(a)(7) and 301(g), the court summarily adopted the magistrate's recommendation, which in turn gave improper deference to the agency's unexplained reversals. This is reversible error. The APA expressly authorizes judicial review of agency action and empowers courts to "hold unlawful and set aside agency action… found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Here, the agency's conduct reflects precisely that type of unlawful arbitrariness. USCIS previously approved Form N-600s for both Appellant and his father—formal acknowledgments of derivative U.S. citizenship through the same familial lineage. Yet without any intervening factual change or legal explanation, the agency revoked Appellant's approval and opposed his claim in removal proceedings. No reasoned basis was provided for this reversal, nor was Appellant afforded an opportunity to challenge the agency's rationale in an administrative hearing or appeal. Such abrupt reversals, particularly when they concern citizenship, offend both the APA and principles of fundamental fairness.

Moreover, the BIA's own unpublished precedent confirms that citizenship claims may warrant reopening even where alienage was previously conceded. In the unpublished case of *In re Hinojosa-Trejo*, A090 393 900 (BIA Mar. 11, 2019), the

Board acknowledged that where newly presented evidence casts doubt on prior alienage findings, and the record supports a plausible claim to U.S. citizenship, reopening may be warranted in the interest of justice.[4] Appellant presented precisely that type of evidence here—birth records, military documentation, historical barriers to Cruz Rodriguez's reentry, and subsequent N-600 approvals within his own family—yet the court refused to engage with the administrative inconsistency.

The INA's framework, viewed through the lens of *Loper Bright*, demands more. Courts must independently construe statutory terms and ensure that the agency's actions align with the law and the Constitution. This Court should reverse and remand so that Appellant's claims may receive the full and fair *de novo* review the APA and the Due Process Clause require.

## V.     The Government is Estopped From Reversing Its Prior Citizenship Grants Without Justification.

The government cannot confer derivative citizenship through an N-600 adjudication, allow an individual to rely on that formal determination, and then reverse course without following required procedures or presenting new evidence. In this case, USCIS approved N-600 applications for both Appellant's father, Jorge Guerra Vazquez, and Appellant himself. These approvals were based on the same familial line and legal theory of derivative citizenship through Cruz Rodríguez, a

---

[4] In accordance with Federal Rule of Appellate Procedure 32.1(b), the undersigned Counsel has attached a copy of this unpublished BIA decision along with Appellant's Opening Brief.

U.S.-born ancestor. Both Appellant and his father were issued certificates of citizenship after taking the oath, conferring legal status under the INA and federal regulations. USCIS's later reversal of Appellant's N-600—without providing formal notice or citing new facts—violated statutory safeguards and due process.

### A. Collateral Estoppel Bars the Government's Attempt to Re-Litigate Citizenship Already Conclusively Determined

The doctrine of collateral estoppel prohibits re-litigation of issues already resolved in a prior adjudication between the same parties or their privies. *See Montana v. United States*, 440 U.S. 147, 153–54 (1979). This principle applies with equal force to administrative proceedings. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).

Here, Guerra's father's N-600 was approved on or about November 9, 2021, and he took the oath of allegiance on December 2, 2021. Appellant's own N-600 application was filed shortly thereafter, while he remained in DHS custody. It was approved and a certificate of citizenship issued to him on or about August 2023. USCIS thereby recognized Guerra's citizenship as conferred under INA §§ 301(a)(7) and 301(g). Under 8 C.F.R. § 333.5(a), issuance of the certificate upon approval and oath constitutes the formal conferral of citizenship. Although USCIS may later seek to cancel the certificate in select circumstances, it may only initiate revocation

proceedings under 8 C.F.R. § 342.1, which mandates the service of a formal notice containing specific allegations of fraud or illegality, and an opportunity to respond. *Cf. United States v. Chou Jin Kiang*, 56 F. App'x 696, 698 (6th Cir. 2003) (fraud must be proven by "clear, unequivocal and convincing evidence"). As USCIS did not follow such procedural safeguards, it acted without statutory authority or factual basis, rendering its reversal of Guerra's N-600 *ultra vires* and legally infirm.

### B. Appellant's Detrimental Reliance and the Agency's Departure from Its Own Regulations Warrant Estoppel as to Citizenship.

Appellant detrimentally relied on the government's express recognition of his U.S. citizenship. Upon receipt of his certificate, he reasonably believed that his legal status was secure. The reversal of that recognition—without citing new factual developments as required by 8 C.F.R. § 342.1—was both manifestly unjust and *ultra vires* of the regulation. Courts have recognized that estoppel may apply against the government in extraordinary cases of administrative misconduct or affirmative misrepresentation. *See INS v. Hibi*, 414 U.S. 5, 8 (1973).

The agency reversed its position without acknowledging its own prior findings, without initiating formal cancellation procedures, and without affording Appellant the opportunity to respond. The only intervening development appears to be the filing of a Federal Tort Claims Act lawsuit—raising serious concerns of improper motive and selective enforcement.

### C. The Agency's Inconsistent Treatment of Similarly Situated Family Members Undermines Equal Protection and Due Process.

Other Guerra family members have pursued N-600 applications based on the same ancestral lineage and legal theory. Some, including Appellant's aunt and uncle, were approved and remain valid. *See* Pl's Resp. to Mot. to Dismiss, ECF No. 16, at 5 n.1. Yet, Appellant alone was stripped of his status without explanation, as USCIS articulated no legal or factual distinction that justifies this disparate treatment.

Such unequal enforcement raises serious Equal Protection concerns. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing "class-of-one" claims based on arbitrary governmental conduct, which requires showing that he "has been intentionally treated differently from others similarly situated" without rational basis for the disparate treatment). In citizenship matters—where individual dignity, liberty, and legal identity are at stake—courts should be especially vigilant in requiring consistency, transparency, and fidelity to law. Yet here, the Government has no plausible explanation for revoking Appellant's citizenship certificate while continuing to honor those of similarly situated members of his family.

For the above and foregoing reasons, the Government's reversal of Appellant's citizenship, without proper process or justification, should be vacated. This Court therefore estop the Government from denying USCIS's original, lawfully granted recognition of Appellant's United States citizenship.

## VI.    The Government's Conduct Violated Appellant's Fifth Amendment Right To Due Process.

The Due Process Clause of the Fifth Amendment prohibits the United States government from depriving any person of life, liberty, or property without due process of law. This protection is at its zenith in cases implicating citizenship. "[N]o deportable alien may be expelled until it has first been determined…that he is in fact an alien." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). Here, the government deprived Appellant—who had a colorable and ultimately meritorious claim to U.S. citizenship—of his liberty and property interests without adequate procedural safeguards, legal process, or meaningful judicial review.

Appellant was detained in ICE custody and removed from the United States while his derivative citizenship claim was pending before USCIS. Although Appellant's father had already been approved for derivative citizenship via Form N-600 in November 2021 and took the oath on December 21, 2021, Appellant's own N-600—filed shortly thereafter—was not adjudicated until nearly two years later, in August 2023, although filed in December 2021. That delay proved pivotal. Rather than allow Appellant to remain in the country while his claim was pending, the agency proceeded with removal based on a legal assumption of alienage that it ultimately determined to be incorrect.

In doing so, the government foreclosed Appellant's opportunity to be heard on the central issue of his case: his citizenship. There is no indication in the record that Appellant received a jurisdictional hearing to contest that fundamental status before deportation. Despite the district court being put on notice of the pending claim, and despite Appellant's counsel notifying both the IJ and ICE about the derivative claim pending before USCIS, no judicial forum meaningfully engaged with Appellant's assertion of citizenship prior to his removal.

This is precisely the kind of procedural failure that the Supreme Court has long condemned. "Citizenship is man's basic right for it is nothing less than the right to have rights." *Afroyim v. Rusk*, 387 U.S. 253, 267 (1967). When the government seeks to remove someone who may, in fact, be a citizen, it must provide the highest level of process available under the law. That did not happen here. Instead, the government treated Appellant as removable without affording him the chance to contest his status through discovery, an evidentiary hearing, or de novo judicial review.

Moreover, the agency's conduct—in proceeding with removal while actively adjudicating a claim of citizenship and later reversing itself to grant that very claim— casts grave doubt on the fairness and impartiality of the process. Such actions offend

not only procedural due process but the foundational principles of equal protection and fairness under the rule of law.

For these reasons, this Court should find that the district court erred in failing to address the due process violations implicated by Appellant's removal and should remand for further proceedings on this constitutional claim.

## VII.   The FTCA Claims Were Improperly Dismissed Under the Sovereign Immunity Exceptions.

Appellant's complaint plausibly alleges that immigration officers detained and removed him from the United States while aware that his father's derivative citizenship application—based on the same ancestral lineage—was pending and actively under review by USCIS.[5] In November 2021, shortly after Appellant's removal in October 2021, USCIS approved the Form N-600 filed by Appellant's father, Jorge Guerra Vásquez, recognizing his U.S. citizenship through Cruz Rodriguez.[6] Counsel had previously notified both DHS and the Immigration Judge that this application had been filed.[7] Appellant's own N-600 was submitted in December 2021 and approved in August 2023.[8]

---

[5] *See* Original Complaint, at ¶ 44.
[6] *See* ECF No. 1-10, Ex. J, Notice of Approval of N-600 of Plaintiff's Father.
[7] *Id.*
[8] *Id.* at ¶ 46; *see* ECF No. 1-11, Ex. K, Appellant's Certificate of Citizenship dated August 2023.

These facts support claims for false imprisonment and negligence under the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680. The FTCA waives sovereign immunity for tortious conduct committed by federal employees acting within the scope of their employment. The discretionary function exception does not apply where, as here, officers act contrary to binding rules or fail to adhere to established procedures. *See Berkovitz v. United States*, 486 U.S. 531, 544 (1988) (exception does not bar claims based on violations of mandatory directives).

False imprisonment is actionable under the FTCA when a person is detained without lawful authority. *See Millbrook v. United States*, 569 U.S. 50, 55 (2013) (recognizing government liability under the FTCA for intentional torts, including false imprisonment, by law enforcement officers). Deporting a person with a pending and colorable derivative citizenship claim—particularly one tied to a concurrently adjudicated application within the same nuclear family—exceeds the bounds of lawful discretion.

A United States citizen cannot be removed under the INA, and the government bears the burden of proving alienage by clear and convincing evidence before removal. *See* 8 C.F.R. § 1240.8(c); *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) ("Deportation of a citizen is ... the loss of liberty. It may result also in loss of property.").

Dismissal of Appellant's FTCA claims at the pleading stage was improper. Courts routinely allow these claims to proceed to factual inquiry where the detainee plausibly alleges official misconduct or detention in violation of legal norms. *See Castro v. United States*, 34 F.4th 431, 436–37 (5th Cir. 2022) (reversing dismissal of FTCA claims where factual allegations supported inference of wrongful detention). Here, Appellant was removed despite timely notice that his father's derivative citizenship claim was pending, and without any subsequent individualized review of his own eligibility for derivative citizenship.

At minimum, the complaint raised triable issues as to whether DHS officers acted within lawful bounds when they executed Appellant's removal amid an unresolved and ultimately successful derivative citizenship claim. Those claims merit factual development and should not have been dismissed under Rule 12(b)(1) or (6).

## VIII.  Appellant Was Treated Unequally Compared to Similarly Situated Individuals, Including His Own Family Members.

Appellant's removal and prolonged denial of his derivative citizenship claim stand in sharp contrast to the treatment of similarly situated members of the Guerra family, several of whom have pursued or are currently pursuing N-600 applications

grounded in the same lineage.[9] These family members—including Appellant's father—have asserted claims based on descent from Cruz Rodriguez and the doctrine of constructive physical presence. The government has not subjected them to removal proceedings or the procedural irregularities Appellant faced.

Appellant's father, Jorge Guerra Vasquez, filed his N-600 in November 2021 while Appellant remained in ICE custody.[10] Counsel notified the Immigration Judge and DHS of the pending application, yet Appellant was deported in October 2021—just weeks before USCIS approved his father's application.[11] Appellant later filed his own N-600 in December 2021, which was not granted until August 2023.[12] Meanwhile, other Guerra relatives pursuing identical lineage-based claims have not experienced the same adverse action.[13]

The Fifth Amendment's equal protection guarantee, as applied to the federal government through the Due Process Clause, prohibits arbitrary and disparate treatment of similarly situated individuals. *See Sessions v. Morales-Santana*, 582 U.S. 47, 60–62 (2017). Appellant and his father relied on the same ancestry, theory of constructive physical presence, and documentary evidence. Yet, Appellant alone

---

[9] *See* Plaintiff's Original Complaint, ECF No. 1 ¶ 50.
[10] *Id.,* at ¶ 44; *see* ECF No. 1-10, Ex. I, Receipt Notice for N-600 of Plaintiff's Father.
[11] *Id.*, at ¶¶ 44–45; *see* ECF No., 1-11, Ex. J, Approval Notice for N-600 of Plaintiff's Father.
[12] *Id.*, at ¶ 46; *see* ECF No. 1-12, Ex. K, Certificate of Citizenship, issued in August 2023.
[13] *Id.*, at ¶ 50.

was forcibly removed from the country without adjudication of his claim, while his father was permitted to naturalize, and other family members are undergoing the same review without apparent prejudice.[14]

This differential treatment lacks any rational basis on the record and violates foundational equal protection norms. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing that "class-of-one" equal protection claims are actionable when government action lacks rational justification). The government has not offered any statutory or evidentiary justification for singling out Appellant for removal while allowing similarly situated relatives to remain and pursue their claims. Such disparate and unexplained treatment of identically situated individuals warrants judicial intervention, especially when it involves the fundamental question of citizenship.

## IX.   The District Court Failed to Consider the Broader Pattern of Agency Misconduct in Citizenship Determinations

The district court's summary dismissal of Appellant's citizenship claim occurred against a troubling backdrop of documented agency misconduct in adjudicating citizenship. In prior high-profile cases—including those of Pedro Guzman and Mark Lyttle—U.S. citizens were wrongly detained, deported, and

---

[14] *Id.*, at ¶¶ 44–50.

denied basic due process protections, often based on erroneous agency determinations.[15] These systemic failures are not mere anomalies but part of a broader pattern that places an enhanced obligation on courts to rigorously examine derivative citizenship claims before rejecting them.

Pedro Guzman, a U.S.-born citizen with cognitive disabilities, was deported to Mexico in 2007 despite having never left the United States. Mark Lyttle, another U.S. citizen, was similarly deported in 2008 after Immigration and Customs Enforcement (ICE) misclassified him based on flawed assumptions about his identity and citizenship.[16] Both cases involved the government's failure to verify citizenship status, compounded by the denial of access to legal counsel and critical documentation. These examples underscore that the consequences of erroneous citizenship findings are not speculative—they are severe, well-documented, and irreparable.

In Appellant's case, the same hallmarks of procedural injustice are present. Appellant was denied access to his full administrative record. The agency failed to

---

[15] *See* Nina Bernstein, *U.S. Citizen, 29, Is Deported by Immigration Officials*, N.Y. Times (May 6, 2008), https://www.nytimes.com/2008/05/06/nyregion/06deport.html (describing Mark Lyttle's wrongful deportation); *see also* Sam Quinones, *Deportation of U.S. Citizen Pedro Guzman Baffles Advocates*, L.A. Times (Aug. 28, 2007), *available at:* https://www.latimes.com/archives/la-xpm-2007-aug-28-me-deport28-story.html.

[16] U.S. Gov't Accountability Off., GAO-15-153, *Immigration Enforcement: ICE Can Improve Its Oversight of Aliens Removed from the United States* 11–14 (2014) (documenting failures in ICE's verification of U.S. citizenship prior to removal).

provide a coherent explanation for its reversal of its prior approval, and the district court adopted the agency's conclusions without permitting discovery or a hearing. More troubling still, other members of the Guerra family have received different adjudications based on the same lineage—suggesting either arbitrary enforcement or internal agency inconsistency. [17] The government has never explained these discrepancies.

Courts have long recognized that "[c]itizenship is man's basic right for it is nothing less than the right to have rights." *Trop v. Dulles*, 356 U.S. 86, 102 (1958). In cases involving the denial of citizenship, particularly where there is historical precedent of government overreach or error, courts must exercise the utmost caution and independent judgment. The Fifth Circuit has emphasized the need for fact-finding and jurisdictional development where factual disputes exist, especially in cases involving fundamental rights such as citizenship. [18]

By failing to account for the broader historical and institutional context of agency error—and by ignoring the warning signs present in this case—the district court abdicated its duty to serve as a meaningful check on executive action.

---

[17] *See* Pl's Resp. to Mot. to Dismiss, ECF No. 16, at 5, n.1 (describing inconsistent adjudications of citizenship claims among Guerra family members based on same ancestral line).

[18] *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("Where the jurisdictional issue and substantive claims are so intertwined... the court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.").

Citizenship is not merely a procedural classification; it is a constitutional status with immense legal and personal significance. Where credible claims of citizenship are raised and factual questions remain unresolved, dismissal is not just premature—it is constitutionally suspect.

## **CONCLUSION**

This appeal arises from a profound failure of process, fairness, and statutory fidelity. Appellant Jorge Antonio Guerra Quezada seeks not special treatment, but a fair adjudication of his derivative citizenship claim grounded in law and fact. The record reflects an unbroken lineage of U.S. citizenship from Cruz Rodriguez—a woman born on American soil, forced into cultural exile, and denied reentry through error—not choice. The constructive presence doctrine, long acknowledged by the agency, squarely applies. The government's own prior approvals, including Appellant's and his father's N-600s, confirm as much.

Yet Appellant was detained, deported, and stripped of recognition without a hearing, without access to the administrative record, and without explanation. The agency reversed its own final adjudication absent fraud or new information, in contravention of its own regulations. The district court, in adopting the magistrate's truncated Findings, failed to meaningfully engage with these facts or afford the jurisdictional discovery constitutionally required where citizenship is at stake. The

consequences of denying a U.S. citizen recognition—detention, removal, separation from family, and exclusion from their own country—are among the gravest any government can impose. That power must be exercised with care, consistency, and adherence to legal standards. It was not here.

For the foregoing reasons, this Court should reverse the district court's judgment and remand the case with instructions to (1) vacate the dismissal, (2) compel production of the full administrative record, and (3) conduct a jurisdictional evidentiary hearing on Appellant's citizenship claim. In the alternative, this Court should find that Appellant has established derivative citizenship as a matter of law and order immediate recognition and relief.

DATE: July 21, 2025.

Respectfully submitted,


___/s/ John M. Bray_____
John M. Bray
The Law Office of John M. Bray, PLLC
911 N. Bishop Ave.
Dallas, Texas 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com
*Attorney for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case, including counsel for Appellees, are registered CM/ECF users and that service will be accomplished by the CM/ECF system on the following users:

Brian W. Stoltz
U.S. Department of Justice
U.S. Attorney's Office – Dallas
Earle Cabell Federal Building
1100 Commerce St., Third Floor
Dallas, Texas 75242
Brian.Stoltz@usdoj.gov

                                    ___*/s/ John M. Bray*_____
                                    John M. Bray
                                    The Law Office of John M. Bray, PLLC
                                    911 N. Bishop Ave.
                                    Dallas, Texas 75208
                                    Tel: (855) 566-2729
                                    Fax: (214) 960-4164
                                    Email: john@jmblawfirm.com
                                    *Attorney for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1. This document complies with the word limit of Fed. R. App. Proc. 32(a)(7)(B)(i) because this document contains 7,303 words, exclusive of the table of contents, table of authorities, statement regarding oral argument, and certificates of service and compliance.

2. This document complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 (Version 2501 Build 16.0.18429.20132) 64-bit, in 14-point Times New Roman font, except for footnotes, which are in 12-point Times New Roman font pursuant to Fifth Circuit Rule 32.1.

DATE: July 21, 2025.

       */s/ John M. Bray*
       John M. Bray
       The Law Office of John M. Bray, PLLC
       911 N. Bishop Ave.
       Dallas, Texas 75208
       Tel: (855) 566-2729
       Fax: (214) 960-4164
       Email: john@jmblawfirm.com
       *Attorney for Appellant*



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____
5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

Diez, Jaime M
Jones & Crane
PO BOX 3070
Brownsville, TX 78523

DHS/ICE Office of Chief Counsel - HLG
1717 Zoy Street
Harlingen, TX 78552

Name: HINOJOSA-TREJO, CARLOS JA...     A 090-393-900

Date of this notice: 3/11/2019

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Malphrus, Garry D.
Mullane, Hugh G.
Morris, Daniel

Schwarz
Userteam: Docket

For more unpublished decisions, visit
www.irac.net/unpublished/index

Cite as: Carlos Javier Hinojosa-Trejo, A090 393 900 (BIA March 11, 2019)



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A090-393-900 – Harlingen, TX

In re:  Carlos Javier HINOJOSA-TREJO

Date:

**MAR 1 1 2019**

IN REMOVAL PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:  Jaime M. Diez, Esquire

ON BEHALF OF DHS:         Carolyn Abdenour
                          Assistant Chief Counsel

APPLICATION:  Termination of proceedings; remand

Immigrant & Refugee Appellate Center, LLC | www.irac.net

The respondent, a native and citizen of Mexico, appeals from the Immigration Judge's decision dated August 24, 2017, ordering him removed from the United States. The Department of Homeland Security has filed a motion for summary affirmance. The record will be remanded.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard.  8 C.F.R. § 1003.1(d)(3)(i).  We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The record shows that the respondent admitted to being a native and citizen of Mexico (Tr. at 3).  However, he asserts, in a motion filed during the pendency of the appeal, that he has now submitted sufficient evidence to establish that he acquired United States citizenship at birth, and that proceedings should be terminated.  Specifically, he claims to have acquired United States citizenship at birth through his father, who he claims had acquired citizenship at birth through his father, i.e., the respondent's grandfather.

Evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the respondent must come forward with evidence to substantiate his citizenship claim. *Matter of Hines*, 24 I&N Dec. 544, 546 (BIA 2008).  The Immigration Judge gave the respondent a full opportunity to present evidence regarding his citizenship claim, and concluded "there's been nothing further presented to the Court with respect to any speculative claim of citizenship" (Tr. at 61). The Immigration Judge did not make detailed findings of fact.

The motion the respondent filed on appeal is accompanied by copies of numerous documents. Several documents are relatively recent, and primarily relate to his father's claim for United States citizenship. [1]  Other documents relate to the successful citizenship claim made by the respondent's

---

[1] These documents include an affidavit from the respondent's claimed father, Jose Julian Hinojosa Maldonado, a letter discussing Jose Hinojosa's 2015 application for a U.S. passport, an application for a U.S. passport, a copy of Jose Hinojosa's Mexican birth certificate, and a copy of his U.S. permanent resident card, with an expiration date of October 29, 2020.

A090-393-900

father's sister, Esther Hinojosa Maldonado, born in 1947, and his father's brother, Tirso Hinojosa, born in 1939. Still other documents, some of them dating back many decades, detail certain legal aspects of the respondent's grandfather's citizenship, marriage and residence status, as those impact the respondent's father's claim to citizenship. The respondent argues that these documents, in conjunction with testimony at a remanded hearing, would establish that he is the biological child of a United States citizen father (born in Mexico, but who acquired citizenship at birth) who was physically present in the United States for at least 10 years prior to the respondent's birth in Mexico in 1973, and that five of those years were after his father was 14 years of age (Respondent's Br. at 22),

We acknowledge the DHS's argument that the Immigration Judge had jurisdiction because the respondent conceded alienage and removability (DHS Br. at 2). However, given that the respondent cannot waive citizenship (except though a very specific procedure), and due to our limited ability to make findings of fact, we conclude that a remand is warranted so that the Immigration Judge may undertake additional fact-finding. *See* 8 C.F.R. § 1003.1(d)(3)(iv). Upon remand, the parties should be allowed to make any relevant argument, or submit any additional relevant evidence, at the discretion of the Immigration Judge. In remanding this case, we express no opinion on the ultimate outcome of these proceedings. The following order will be entered.

ORDER: The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

FOR THE BOARD

Immigrant & Refugee Appellate Center, LLC | www.irac.net